## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOSEPH PATRICK LAWSON, | : | |
| Plaintiff, | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | NO. 12-6100 |
| CITY OF COATESVILLE, et. al. | : | |
| Defendants. | : | |

**August 28, 2013**                                                                                    **Anita B. Brody, J.**

### MEMORANDUM

Plaintiff Joseph Lawson ("Lawson") alleges that Defendants Coatesville Police Officers

Brenden Boyle and Jeffrey Ingemie, former Coatesville Police Chief Julius Canale and the City

of Coatesville violated his Fourth and Fourteenth Amendment rights in violation of 42 U.S.C. §§

1983 and 1985 when they searched, seized and arrested him without probable cause.  Lawson

alleges that the City of Coatesville and former Police Chief Canale violated his constitutional

rights by failing to establish and maintain a policy to train and supervise police officers as to the

proper exercise of police powers, including the power to seize and arrest citizens.  Lawson also

brings state law claims of false arrest, false imprisonment, malicious prosecution and civil

conspiracy against former Police Chief Canale and Officers Boyle and Ingemie.  I exercise

jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367.  Defendants filed a Motion to Dismiss

and/or Summary Judgment, or in the alternative, Partial Motion to Strike Plaintiff's Amended

Complaint. (ECF No. 11).   For the reasons stated below I will deny Defendants' motion to

dismiss without prejudice and grant in part and deny in part Defendants' motion to strike.

1

I.      **BACKGROUND**[1]

On October 29, 2010, Jeffery Middleton contacted the City of Coatesville Police

Department and reported that he had been robbed by three black men.  Police Officers Brenden

Boyle and Jeffrey Ingemie, both white, arrived at the scene.  Middleton told the officers that he

was robbed at gunpoint for $70.00 and prescription pills.  He said that the robbers were still in

the area.  He rode in the officers' vehicle and identified the robbers, a practice known as a "field

show up."

At approximately 10:22 p.m., Officers Boyle and Ingemie arrested Plaintiff Joseph

Lawson.  The facts leading up to Lawson's arrest are unclear.  Lawson maintains that the police

officers arrested him because he was a black male in the vicinity, while blatantly ignoring

evidence pointing to other suspects and failing to thoroughly investigate the robbery.  He was

charged with robbery, theft, terroristic threats and conspiracy.  He was incarcerated in Chester

County Prison from October 30, 2010 to December 22, 2010, a total of fifty-four days.  At a

preliminary hearing on December 22, 2010, Middleton testified that

> They [the police] came to the gas station and asked me what happened. I
> explained what happened, and they went, put me in the car, and went over to
> where the individuals were and I identified two people that I saw fleeing me when
> the incident happened,"… "They - - I recognized Maxwell, so I was able to say
> Maxwell. And the other person I identified by pointing him out.

Compl. ¶ 14.  He stated that the police "picked up Mr. Lawson, not the person that they should have

picked up" and that Lawson was not one of the individuals he pointed out.  *Id.*  Middleton testified that

he thought he identified the robber when he was in the police car:

> There was a younger man, and I thought I identified him. And they never showed
> me a person while I was at the police station, they said they had who it was. And

---

[1] All facts in this section are taken from Plaintiff's Complaint unless otherwise noted.

the reason I know Mr. Lawson wasn't the one who did it was because the person
who did it did not have gray hair, for one thing, and the person was wearing a
white and black jacket with white stripes on it . . .

*Id.* He concluded, ". . . I don't know how Mr. Lawson got involved, but apparently he did." *Id.*

The Court dismissed all charges against Lawson. From December 30, 2010 to January

10, 2011, as a result of his arrest and imprisonment, Lawson was hospitalized at the Coatesville

VA Medical Center for "major depressive disorder, recurrent," and "suicidal feelings/thoughts."

Defendants maintain that Lawson fit Middleton's description of the robbers and that

Middleton positively identified him during the field show up. Def. Mot. at 6. In Officer Boyle's

incident report[2] he recounted that

> [t]he victim stated that he had just been robbed by three black males across the
> street from the Gas Stop. He stated that two of the actors were still in the area,
> and were standing by a van on the east side of Pennsylvania Avenue by Harmony
> Street. [Officer Boyle] did make contact with Joseph Lawson and Lewis
> Maxwell, hereafter known as the defendants. The defendants fit the description of
> the actors provide by the victim, and was [sic] also positively identified during a
> field show up.

Def. Mot. Ex. at 4.

In addition to his claim against Officers Boyle and Ingemie, Lawson alleges that former

Police Chief Julius Canale knew or should have known of the constitutional deprivations they

committed. Lawson brings a policy, custom, pattern and practice claim against the City of

Coatesville and Canale for failure to train and supervise officers regarding arrests, exercise of

---

[2] Courts can consider "an undisputedly authentic document that a defendant attaches as an
exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Pension
Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).
Information contained in police incident reports are a matter of public record. *Gallis v. Borough
of Dickson City*, 3:05 CV 551, 2006 WL 2850633, at *7 (M.D. Pa. Oct. 3, 2006) (citing *Scheetz
v. Morning Call, Inc.,* 946 F.2d 202, 207 (3d Cir.1991)).

police power, failure to monitor officers and take disciplinary action against officers subject to

complaints of misconduct, and use of force not reasonably related to police duties.  In paragraphs

27 through 36 he makes a series of allegations relating to sexual misconduct and racial

discrimination within the Coatesville Police Department summarized as follows:

- Five white Coastesville police officers (Chris McEvoy, Scott Newhouse, Brandon Harris, Steven Smith and James Audette) and a brother of an officer were implicated in a sex scandal in 2006 to 2007 and were known as the "Half Dirty Dozen" because of their ability to escape punishment.  Compl. ¶ 27.  Some of the sexual misconduct occurred while the implicated officers were on duty.  Compl. ¶ 28.

- The officer who conducted the internal investigation recommended that all of the officers involved in the sex scandal be fired.  Former Chief Canale ignored the recommendation.  The woman involved in the sex scandal purportedly was paid $25,000 a piece by at least four of the Dirty Dozen officers so that no criminal charges were filed.  Compl. ¶ 29.  Canale ignored the misconduct.  Compl. ¶ 30.

- All the members of the "Half Dirty Dozen" are white.  Compl. ¶ 31.  Canale promoted four of the "Half Dirty Dozen" members and passed over more qualified African-American officers with more seniority for promotions.  Compl. ¶ 32.

- Canale and members of the "Half Dirty Dozen" represented the majority of the leadership and ranking officers in the department.  "Half Dirty Dozen" member Brandon Harris was put in charge of the department's internal investigations.  Compl. ¶ 33.

- Canale knew or should have known the prevalence of racial animus against African-Americans and Hispanics in the City of Coatesville Police Department, including Officer Chris Strunk's public display of a Confederate Flag on his car.  Compl. ¶ 34.

- Officer Brandon Harris posted a Facebook picture of an ad for a fried chicken restaurant with the caption, "I told you I was in the Hood. Lol."  Compl. ¶ 34.  He also posted racially offensive comments on Facebook in reference to Hispanics.  Compl. ¶ 35.

- Hispanic and African American Coatesville police officers witnessed white police officers and supervisors make racially offensive comments in reference to minority citizens in Coatesville, calling them "subhuman mutants."  The minority officers complained repeatedly about these comments but received no response.  Compl. ¶ 36.

Officers Boyle and Ingemie were not named in the above paragraphs and were not part of the "Half Dirty Dozen."

On April 15, 2013 Defendants filed a motion to dismiss and/or summary judgment on the grounds that Officers Boyle and Ingemie are entitled to qualified immunity.  Additionally, they argue that because they are entitled to qualified immunity, neither the City of Coatesville nor Canale can be held liable.  In the alternative, Defendants move to strike paragraphs 27 through 36 of the Amended Complaint because there are no claims based upon the alleged sex scandal or racial discrimination detailed in those paragraphs.

## II.     MOTION TO DISMISS

### A.  Legal Standard

A motion to dismiss should be granted under Rule 12(b)(6) if the moving party "under any reasonable reading of the complaint . . . may be entitled to relief."  *Kerchner v. Obama*, 612 F.3d 204, 207 (3d Cir. 2010) (internal quotation marks omitted).  The complaint must allege facts sufficient to "raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Rather, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Id.* (internal quotation marks omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*

In deciding a motion to dismiss under Rule 12(b)(6), a court must "accept all factual allegations in the complaint as true and view them in the light most favorable to the plaintiff."

*Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006).  This "assumption of truth"

is "inapplicable to legal conclusions."  *Iqbal*, 129 S. Ct. at 1949-50.

"As a general matter, a district court ruling on a motion to dismiss may not consider

matters extraneous to the pleadings.  However, an exception to the general rule is that a

document integral to or explicitly relied upon in the complaint may be considered . . . ."  *In re*

*Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (emphasis omitted)

(citations omitted) (internal quotation marks omitted).  Thus, a court "may . . . consider matters

of public record, orders, exhibits attached to the complaint and items appearing in the record of

the case."  *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1385 n.2 (3d Cir. 1994).

Further, "a court may consider an undisputedly authentic document that a defendant attaches as

an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Pension*

*Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

Information contained in police incident reports are considered matters of public record.  *Gallis*

*v. Borough of Dickson City*, 3:05 CV 551, 2006 WL 2850633, at \*7 (M.D. Pa. Oct. 3, 2006)

(citing *Scheetz v. Morning Call, Inc.,* 946 F.2d 202, 207 (3d Cir.1991)).

### B.  Discussion

Government officials are entitled to qualified immunity in order to "accommodate two

important interests: the officials' interest in performing their duties without the fear of constantly

defending themselves against insubstantial claims for damages, and the public's interest in

recovering damages when government officials unreasonably invade or violate individual rights

under the Constitution and laws of the United States."  *Orsatti v. New Jersey State Police,* 71

F.3d 480, 483 (3d Cir. 1995) (citing *Anderson v. Creighton,* 483 U.S. 635, 639 (1987)). Thus

when performing discretionary functions, police officers are "'shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Sharrar v. Felsing*, 128 F.3d 810, 826 (3d Cir. 1997) (citing *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)).  A government actor is entitled to qualified immunity, unless (1) the facts taken in the light most favorable to the party asserting the injury show that an officer's conduct violated a constitutional right, and that (2) the right is clearly established so that a reasonable person would know that the conduct was unlawful.  *Saucier v. Katz,* 533 U.S. 194, 201-02 (2001).  These factors can be considered in either order depending on the circumstances of the case at hand.  *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).  "[Q]ualified immunity will be upheld on a 12(b)(6) motion only when the immunity is established on the face of the complaint."  *Thomas v. Independence Twp.*, 463 F.3d 285, 291 (3d Cir. 2006) (citation omitted).  The defendant has the burden to plead the defense to a claim of a qualified immunity.  *Id.* at 293.

Lawson alleges that the police officers arrested him without probable cause in violation of his Fourth Amendment rights.[3]  "An arrest was made with probable cause if 'at the moment the arrest was made . . . the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that [the suspect] had committed or was committing an offense.'"  *Wright v. City of Phila.,* 409 F.3d 595, 602 (3d Cir. 2005) (citing *Beck v. Ohio,* 379 U.S. 89, 91 (1964)).  The constitutional validity of the arrest does not depend on whether or not the suspect in fact committed the crime.  *Id.*  When answering such a question courts apply an objective standard

---

[3] "The Fourth Amendment prohibits arrests without probable cause." *Berg v. Cnty of Allegheny,* 219 F.3d 261, 269 (3d Cir. 2000).

based on the facts available to the officers at the moment of the arrest.  *Thompson v. Wynnewood of Lower Merion Twp.*, Civ. A. No. 12-2308, 2012 WL 4033706, at \*6 (E.D. Pa. Sept. 13, 2012) (citing *Barna v. City of Perth Amboy*, 42 F.3d 809, 819 (3d Cir. 1994)).

The question then, is could Officers Boyle and Ingemie have concluded that there was probable cause to arrest Lawson based on the information they had at the time?  The answer will depend on whose facts you choose to believe.  According to Boyle and Ingemie, Lawson fit the victim's description and the victim identified Lawson as the robber in the field show up, providing probable cause for the arrest.  They argue that even if the victim pointed to someone else, but the Officers thought he pointed at Lawson, the officers would still have had probable cause to arrest Lawson.[4]   According to Lawson, the officers arrested him "acting on nothing more than the robbery victim stating that he had been robbed by 'three black men,'" and because he was a black male in the vicinity.  Compl. ¶ 9.  Lawson also plead that "[i]n so doing, the defendant officers blatantly ignored evidence pointing to other suspects and without reasonable thorough investigation of the robbery."  *Id*.  The victim stated that he identified one of the robbers, a younger man, by pointing him out, and that he had no idea why Lawson, an older man with gray hair, was arrested.

These divergent versions of the facts vary so widely that the analysis for probable cause in each case would be different.  Further discovery may elucidate what transpired, and whether the Officers acted in an objectively reasonable manner.  At this stage of the proceedings, the analysis for qualified immunity must be based on the facts taken in the light most favorable to

---

[4] The Third Circuit has noted that while "a positive identification by a victim witness, without more, would usually be sufficient to establish probable cause, this qualified precept cannot be rendered absolute . . . Each case must therefore be examined on the facts." *Wilson v. Russo*, 212 F.3d 781, 790 (3d Cir. 2000).

the party asserting the injury.  *Saucier v. Katz,* 533 U.S. at 201.  If Lawson was in fact arrested

simply because he was a black man in the vicinity of the robbery, the officers would not have

had probable cause to arrest him.  *See United States v. Brignoni-Ponce*, 422 U.S. 873, 885-86

(1975) (finding that reliance on the apparent Mexican ancestry of a car's occupants was

insufficient to provide probable cause to stop the car on the grounds that they were aliens); *Davis*

*v. Mississippi,* 394 U.S. 721 (1969) (finding that there was no probable cause to detain and

fingerprint twenty-four black young men on the basis of a rape victim's description of her

assailant as "a Negro youth."); *U.S. ex. rel. Wright v. Cuyler*, 563 F.2d 627, 630 (3d Cir. 1997)

(finding that "[i]t is obvious that race and age alone . . . do not furnish probable cause"); *Brown*

*v. City of Oneonta, New York*, 221 F.3d 329 (2d Cir. 1999) (finding that "a description of race

and gender alone will rarely provide reasonable suspicion justifying a police search or seizure").

As a result, in the context of a motion to dismiss, Officers Boyle and Ingemie are not entitled to

qualified immunity, and the claims against the City of Coatesville and former Chief Canale

cannot be dismissed.  Defendants' motion to dismiss is denied without prejudice, with the

opportunity to reassert the claim at a later stage of litigation.[5]

### III.   MOTION TO STRIKE

#### A.  Legal Standard

Under Rule 12(f) a court "may strike from a pleading an insufficient defense or any

redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  The purpose of

---

[5] Defendants argue that because Officers Ingemie and Boyle are entitled to qualified immunity, the *Monell* claim against Former Chief Canale and the City of Coatesville should be dismissed because there was no violation of Plaintiff's federally protected rights, and therefore no basis for municipal liability.  Because the officers are not entitled to qualified immunity at this stage, the *Monell* claim cannot be dismissed at this stage either.

a motion to strike is to clean up the pleadings, streamline litigation, and avoid unnecessary forays into immaterial matters." *Zaloga v. Provident Life & Acc. Ins. Co. of Am.,* 671 F. Supp. 2d. 623, 633 (M.D. Pa. 2009). "Immaterial matter is that which has no essential or important relationship to the claim for relief . . . Scandalous matter has been defined as that which improperly casts a derogatory light on someone, most typically on a party to the action." *Id.* Motions to strike are decided on the pleadings alone. *Id.*

"[S]triking a pleading is a 'drastic remedy' to be used sparingly because of the difficulty of deciding a case without a factual record." *BJ Energy, LLC v. PJM Interconnection, LLC,* Nos. 08-3649, 09-2864, 2010 WL 1491900, at *1 (E.D. Pa. Apr. 13, 2010) (quoting *N. Penn. Transfer, Inc. v. Victaulic Co. of Am.,* 859 F. Supp. 154, 158-59 (E.D. Pa.1994)). Therefore, while Rule 12(f) grants the court the power to grant a motion to strike, such motions "are not favored and usually will be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues." *N. Penn. Transfer*, 859 F. Supp. at 158 (internal quotation marks omitted).

### B. Discussion

Defendants seek to strike from the Complaint paragraphs 27 through 33 that recount an alleged sex scandal in the Coatesville Police Department, and paragraphs 34 through 36 that allege a culture of racial discrimination in the department. They argue that these paragraphs did not involve Officers Boyle and Ingemie, and do not relate to Lawson's claims. Paragraphs 27 through 33 describe a sex scandal from 2006 to 2007 that involved five white officers and an officer's brother, a group called the "Half Dirty Dozen." Former Chief Canale allegedly ignored their misconduct and promoted four of them over more qualified African-American officers.

These facts in no way relate to Lawson's allegedly illegal arrest.  Officers Boyle and Ingemie are not a part of the "Half Dirty Dozen."  Lawson argues that these paragraphs are necessary to describe the culture prevalent in the Coatesville Police Department to illustrate that his arrest was motivated by racial discrimination.  Paragraphs 27 through 33 at most describe a culture tolerant of misconduct related to sexual deviancy and perhaps an employment discrimination claim.  Because these paragraphs are both immaterial and scandalous, they are stricken from the Complaint.

Paragraphs 34 through 36 describe racially insensitive and offensive comments made by white police officers in the Coatesville Police Department and allege that Former Chief Canale had or should have had knowledge of racial animus against minorities prevalent in the department.  These allegations relate to Plaintiff's *Monell* claim.  Therefore the motion to strike paragraphs 34 through 36 is denied.

### IV.    CONCLUSION

For the foregoing reasons I will deny Defendants' motion to dismiss on the basis of qualified immunity without prejudice to raise the issue at a later stage of litigation, grant Defendants' motion to strike paragraphs 27 through 33, and deny Defendants' motion to strike paragraphs 34 through 36 of the Complaint.

_____/s/ Anita B. Brody_____
ANITA B. BRODY, J.

Copies **VIA ECF** on _____ to:                              Copies **MAILED** on _____ to:

11